PEARSON, MJ

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL ABDELSHAHID, | ) | CASE NO.  1:08CV1480 |
| Plaintiff, | ) | |
| | ) | JUDGE PETER C. ECONOMUS |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| MICHAEL J. ASTRUE, | ) | BENITA Y. PEARSON |
| Commissioner of Social Security, | ) | |
| Defendant. | ) | **REPORT AND RECOMMENDATION** |

## Introduction

Plaintiff Michael Abdelshahid sought judicial review of the Social Security Administration's ("Agency") final decision denying his application for Supplemental Security Income, pursuant to 42 U.S.C. § 405(g).  The matter was referred to the undersigned for the submission of a Report and Recommendation, pursuant to Local Rule 72.2 and General Order 2008-17.

This is an unfortunate case wherein the record is clearly ambiguous or otherwise incomplete in certain important respects.  The ambiguity centers around the functional effects of Plaintiff Michael Abdelshahid's hearing loss in both ears ("bilateral") and is so pervasive as to convince the undersigned that the Agency's denial and the testimony of the Medical Expert were,

(1:08CV1480)

at crucial times, based upon speculation rather than substantial evidence. Having found that the Agency's denial of benefits is not supported by substantial evidence, the undersigned recommends that the Agency's final decision, regarding whether Michael Abdelshahid's impairment functionally equaled a listed impairment, be reversed and remanded for further consideration.

### I. Overview

Plaintiff Michael Abdelshahid ("Michael") was 16 years old when his parents applied for Supplemental Security Income ("SSI") benefits on his behalf and 17 years old when the final Agency decision was issued. At all relevant times, Michael was an adolescent who had not engaged in any substantial gainful activity prior to the Administrative Law Judge's ("ALJ") decision. (Tr. 16.) There seems to be no dispute that: Michael has had significant hearing loss in both ears since birth; his hearing can be amplified with the use of a hearing aid in each ear; and, until recently, Michael attended a school for deaf children. As the grounds for his SSI application, Michael alleged both disabling hearing loss and mental delay. (Tr. 59.)

The ALJ found that although Michael suffers from the following severe impairments: "hearing impaired bilaterally, communication disorder not otherwise specified, learning disorder, and borderline intellectual functioning (20 C.F.R. 416.924(c))," he does not have an impairment or combination of impairments medically or functionally equal to a Listed impairment. (Tr. 16-17.)

As explained in greater detail below, if an impairment does not meet or *medically* equal a listed impairment, then the ALJ may find disability if the child's impairment is *functionally*

(1:08CV1480)

equivalent to a listed impairment.  To make this determination, the ALJ evaluates six areas of development or functioning.  To establish disability, the child minimally must have "marked" limitations in at least two of six domains or an "extreme" limitation in one domain.[1]  In this case, the ALJ found that Michael had no "marked" or "extreme" limitation in any domain.  (Tr. 20-24.)  Michael argues that the ALJ's findings are incorrect and that he has a "marked" limitation in three of the six domains, specifically the domains of 1) acquiring and using information, 2) interacting and relating with others, and 3) health and physical well-being.  ECF No. 15 at 12.  Accordingly, the crux of the matter before the Court is whether substantial evidence exists to support the ALJ's findings that Michael did not show at least marked limitations in two of these three domains or an extreme limitation in one of the three domains.[2]

After reviewing the administrative record as a whole, including the medical records, other evidence presented, all relevant testimony, and the legal standards applied, the Court finds that the ALJ did not reach a decision supported by substantial evidence.  As explained below, the ALJ's decision and the medical expert's testimony are ambiguous, at best, and speculative or presumptive, at worst, regarding how Michael's hearing loss affects his ability to function in various ways.

---

[1] The range of limitation findings for a domain are: "no limitation," "less than marked," "marked," and "extreme."  *See generally* 20 C.F.R. § 416.926a.  A finding of "less than marked" is used to describe a limitation thought to be not significant enough to support a finding of disabled, either individually or in combination with other findings.

[2] Neither party contests the ALJ's findings regarding the remaining three domains.

(1:08CV1480)

## II. Procedural History

Michael filed an application for Supplemental Security Income benefits on September 16, 2005, alleging a disability due to hearing loss and mental delay. The Agency initially denied Michael's claim on January 6, 2006, and again upon reconsideration on May 5, 2006. On May 26, 2006, Michael filed a request for an administrative hearing before the ALJ which was held on October 16, 2006. Michael, his counsel, his parents and a medical expert attended the hearing. The ALJ issued a decision denying benefits on December 7, 2006, indicating that the denial was based on Michael's lack of an impairment that meets, medically equals, or functionally equals a Listing. (Tr. 16-17.) Michael filed a request for a review of the ALJ's decision which the Appeals Council denied on May 9, 2008. Because the Appeals Council denied Michael's request for review, the ALJ's decision dated December 7, 2006, became the final decision of the Agency. Seeking a review of the Agency's final decision denying him benefits, Michael timely filed a Complaint with this Court asserting the following issue:

> WHETHER THE ALJ'S FINDING THAT THE PLAINTIFF'S IMPAIRMENTS DO NOT FUNCTIONALLY EQUAL A LISTED IMPAIRMENT IS SUPPORTED BY SUBSTANTIAL EVIDENCE.

ECF No. 15 at 1.

## III. Law and Analysis[3]

### A. Judicial Review of a Final Agency Decision

Judicial review of the ALJ's decision denying disability benefits is limited to determining

---

[3] Due to the recommendation for remand, issues briefed but not determinative are not addressed herein.

(1:08CV1480)

whether there is substantial evidence to support the denial decision and whether the ALJ properly applied relevant legal standards. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence is more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Under 42 U.S.C. § 405(g), the findings of the ALJ are conclusive if they are supported by substantial evidence.

In determining the existence of substantial evidence, the reviewing court must examine the administrative record as a whole. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981); *Heston v. Comm'r of Soc. Sec.,* 245 F.3d 528, 535 (6th Cir. 2001). The ALJ's decision must be affirmed if it is supported by substantial evidence even if the reviewing court had decided the matter differently, and even if substantial evidence also supported a different conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). The substantial evidence standard presupposes that there is a "zone of choice" within which the Agency may proceed without interference from the courts. *Mullen*, 800 F.2d at 545 (*quoting Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir.1984)). The court may look into any evidence in the record, regardless of whether it has been cited by the ALJ. *Id.* The reviewing court, however, may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard*, 889 F.2d at 681; *Garner v. Heckler,* 745 F.2d 383, 387 (6th Cir. 1984).

(1:08CV1480)

### B. Determination of Disability in a Minor

An individual under the age of 18 will be considered disabled if he has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations." 42 U.S.C. § 1382(c)(3)(i); 20 C.F.R. §§ 416.906, 416.911(b). The regulations prescribe a three-step sequential evaluation process. *See* 20 C.F.R. § 416.924(a). At Step One, a child will be found "not disabled" if he is engaging in substantial gainful activity. *See* 20 C.F.R. § 416.924(b). At Step Two, a child will be found "not disabled" if he does not have an impairment or combination of impairments that is severe, *i.e.,* impairments that cause no more than minimal functional limitations. *See* 20 C.F.R. § 416.924(c). At Step Three, a child will be found "disabled" if he has an impairment or combination of impairments that meets, medically equals, or functionally equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *See* 20 C.F.R. § 416.924(d).

If a child does not meet or *medicall*y equal a Listing, in order to determine whether a child's impairment(s) *functionally* equals a Listing at Step Three, the ALJ must assess the functional limitations caused by the impairment(s) by considering how a child functions in the following six domains:

      1. Acquiring and using information;

      2. Attending and completing tasks;

      3. Interacting and relating with others;

      4. Moving about and manipulating objects;

      5. Caring for yourself; and

(1:08CV1480)

      6. Health and physical well-being.

20 C.F.R. § 416.926a(b)(1)(i)-(vi); *see also* 20 C.F.R. § 416. 926a(a). If a child's impairment(s) results in "marked" limitations in two domains or an "extreme" limitation in one domain and meets the duration requirements,[4] the impairment(s) functionally equals the listings and the child will be found disabled. *See* 20 C.F.R. § 416. 926a(d).

      The ALJ ruled in favor of Michael at Steps One and Two. With regard to Step One, the ALJ determined that Michael was an adolescent and had not engaged in substantial gainful activity.[5] (Tr. 16.) At Step Two, the ALJ determined that Michael had the following severe impairments: hearing impairment bilaterally, communication disorder, learning disorder not otherwise specified, and borderline intellectual functioning. (Tr. 16.) Neither party contested the ALJ's findings at Steps One and Two. The dispute arose at Step Three.

      If an impairment does not "meet" a listed impairment, disability may nonetheless be established if the child's impairment is medically or *functionally* equivalent to a listed impairment. The plaintiff in this case does not contend that he can establish medical equivalence. Rather, Michael's claim is that his disability is functionally equivalent to a listed disability.

      Concomitantly, Michael specifically seeks relief from the ALJ's findings (in Step Three)

---

[4] "Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the duration requirement." 20 C.F.R. § 416.909.

[5] An individual under age 18 who is engaged in substantial gainful activity (*i.e.* working for profit) may not be considered disabled.

(1:08CV1480)

that he did not have an impairment or combination of impairments causing a "marked" limitation in at least two domains.  A finding of an extreme limitation in at least one domain would also establish a functional equivalent to a listed impairment.

> The Agency defines a marked and extreme limitation as follows:
>
> (2) Marked limitation.
>
> (i) We will find that you have a "marked" limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme."  It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.
>
> (3) Extreme limitation.
>
> (i) We will find that you have an "extreme" limitation in a domain when your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be very seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Extreme" limitation also means a limitation that is "more than marked." "Extreme" limitation is the rating we give to the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean.

20 C.F.R. §§ 416.926a(e)(2)(i), (e)(3)(i).

In the instant case, the ALJ found that Michael did not demonstrate a marked or extreme limitation in any domain.  Specifically, the ALJ found that Michael had *a less than marked limitation* in five of the domains and no limitation in the remaining domain.  Michael argues that

-8-

(1:08CV1480)

the ALJ's findings are incorrect and that he has a "marked" limitation in the domains of 1) acquiring and using information, 2) interacting and relating with others, and 3) health and physical well-being. ECF No. 15 at 12. And, Michael also contends, the ALJ gave "improper weight to the opinions of state agency consultants and the records from St. Rita School for the Deaf while wholly ignoring the opinions of examining psychologist Dr. House and other objective testing in the record." ECF No. 15 at 12. A review of the record disproves the latter contention. In reaching his decision, the ALJ "considered all relevant evidence in the case record" and expressly gave Dr. House's opinion greater weight while considering and weighing all opinion evidence. (Tr. 19.) Nevertheless, the ALJ's decision is not supported by substantial evidence as explained below.

### 1. The Domain of Acquiring and Using Information

A child's ability to hear can greatly affect his ability to acquire and use information.[6]

---

[6] The regulations governing disability determination in children provide the following non-exhaustive examples of limited functioning in acquiring and using information. Even this abbreviated list signifies the importance of one's ability to hear to the domain of acquiring and using information.

> (3) . . . The following examples describe some limitations we may consider in this domain. Your limitations may be different from the ones listed here. Also, the examples do not necessarily describe a "marked" or "extreme" limitation. Whether an example applies in your case may depend on your age and developmental stage; e.g., an example below may describe a limitation in an older child, but not a limitation in a younger one. As in any case, your limitations must result from your medically determinable impairment(s). However, we will consider all of the relevant information in your case record when we decide whether your medically determinable impairment(s) results in a "marked" or "extreme" limitation in this domain.
>
> > (i) You do not demonstrate *understanding of words* about space, size, or time;

-9-

(1:08CV1480)

Generally, it is the claimant's responsibility to provide medical and other evidence that can be used by the Agency to reach conclusions as to whether a disability exists. *See* 20 C.F.R. § 416.912(a), (c). However, before the Agency can make a disability determination, it is responsible for developing a complete medical history and providing for a consultative examination, if information is not available in the record. *See* 20 C.F.R. § 416.912(d), (f). In this case, the ALJ's decision assumes without clear medical or objective evidence to support the assumption that Michael had a *less than marked limitation* in a domain substantially affected by ones ability to hear.[7]

The ALJ relied upon the opinions of State Agency consultants Dr. Mormol and Karen Stailey, Ph.D., in finding a less than marked limitation in the domain of acquiring and using information.[8] (Tr. 20.) The ALJ noted that the Medical Expert, Dr. Strassman, was of the same

---

e.g., in/under, big/little, morning/night.
(ii) You cannot rhyme words or the *sounds in words*.
(iii) You have difficulty recalling important things you learned in school yesterday.
(iv) You have difficulty solving mathematics questions or computing arithmetic answers.
(v) *You talk only in short, simple sentences and have difficulty explaining what you mean.*

20 C.F.R. §§ 416.926a(h)(2)(v), (h)(3)(i-v) (Emphasis added).

[7] Michael was not wearing hearing aids during the hearing before the ALJ, as described below.

[8] Others who tested Michael's hearing reported the following. On August 14, 2006, Lorraine Lombardo, Au.D., an audiologist, tested Michael's hearing and noted "significant decrease since 1/05 exam." (Tr. 208.) It is unclear whether this test was performed while Michael wore hearing aids. Based on the temporal proximity of this test to the hearing before the ALJ during which Michael did not wear hearing aids because he was waiting for new aids, the

(1:08CV1480)

opinion. (Tr. 20.) The ALJ also relied upon the positive reports of Michael's teachers from St. Rita School for the Deaf and Cleveland Central Catholic High School.[9] (Tr. 20.) Consultative doctors Mormol and Stailey relied upon the same hearing test results that the Court finds ambiguous.[10] St. Rita, unlike Central Catholic, was somewhat capable of accommodating Michael's deafness. The ALJ's reliance on Michael's Central Catholic progress report based upon his two-month attendance seems premature, especially given that Michael's father testified

---

Court presumes (for the sake of this report) this test was conducted without hearing aids.

   On March 23, 2006, Elizabeth Ryerson, Au.D., CCC-A, an educational audiologist, who examined Michael's hearing from September, 18, 2003 to September 19, 2005, reported that Michael can hear and understand ordinary conversational voice only within 3 feet and with the ability to see the speaker's face. (Tr. 124.) Ms. Ryerson noted that Michael had difficulty with background noise, hearing at distances greater than 3-6 feet without yelling, and indicated a need for hearing aids in order to understand people properly. (Tr. 124.) On September 19, 2005, Ms. Ryerson tested Michael's hearing without hearing aids. She stated that "Michael's speech discrimination scores have declined compared to his previous test (9/21/04). His current scores are still consistent with his test on 9/18/03." (Tr. 125.) Ms. Ryerson recommended that Michael wear two hearing aids. (Tr. 125.) Ms. Reyerson tested Michael on September 21, 2004 without hearing aids. Michael informed her that one of his hearing aids was broken. (Tr. 129.) Ms. Reyerson noted improved speech discrimination in both ears. (Tr. 129.) Ms. Reyerson tested Michael on September 18, 2003 while Michael wore only a hearing aid in his left ear. (Tr. 132.) She noted improvement in the left ear with amplification. (Tr. 132.) Michael's earliest test of record occurred on November 1, 2001 with Jean M. Kirchner, M.A, CCC/A, an audiologist who tested Michael while he wore two hearing aids and reported that his "[a]ided speech discrimination was excellent." (Tr. 134.)

   [9] The record demonstrates that Michael attended St. Rita School for the Deaf for at least three years. (TR. 109-111.) It also demonstrates that he had only begun attending Central Catholic the September before the ALJ's November 2006 hearing. (Tr. 115-116.)

   [10] "Generally, [the Agency] give[s] more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined [the claimant]." 20 C.F.R. § 416.927(d)(1). It does not appear that Doctors Mormol and Stailey examined Michael.

-11-

(1:08CV1480)

that Michael was already behind his eleventh-grade classmates and stayed after school to attempt to catch up.  (Tr. 254.)

The ALJ's conclusion about Michael's capabilities in this domain can be best described as speculative or presumptive.  Simply put, it is not clear from the record what the state of Michael's hearing is.  The most recent hearing test relied upon by the ALJ during which it was obvious that Michael wore hearing aids in both ears is nearly half a decade old, dated November 1, 2001.  As significantly, the hearing test results in the record showed a decline in Michael's ability to hear over the time period covered in the record and did not clearly articulate whether Michael had been tested with or without hearing aids.  The ALJ's expectation that Michael's "hearing is restorable by a hearing aid" is not confirmed by the record.[11]  (Tr. 17.)  The effect of that presumption is injurious because the ALJ relied on it to essentially find that if Michael had an impairment *functionally* equivalent to a listed impairment, it could be cured by hearing aids.[12]

As stated earlier, there seems to be no dispute that Michael has had a significant hearing loss in both ears since birth.  Yet, it is not clear from the record, among other things,  whether the hearing test results relied upon were conducted with or without hearing aids or whether Michael can even effectively read lips.[13]  As a result, the following are among the questions left

---

[11] The ALJ's decision does not define its use of the term "restorable."  Michael's restored hearing may still warrant a finding of disabled.

[12] Additionally, because a determination of disabled may hinge on nothing more than a finding of an "extreme" limitation in a single domain, it is imperative that the Agency's decision be soundly supported rather than speculative.

[13]  *See infra* for more on Michael's ability to read lips.

(1:08CV1480)

unanswered by the ALJ's decision. How well does Michael *function* when his hearing is aided?[14] Conversely, how well does he function without hearing aids? In either case, does Michael functionally meet or equal a Listing?

The Court finds substantial evidence does not exist to support the ALJ's finding that Michael has a less than marked limitation in the domain of acquiring and using information. Upon remand, the ALJ is ordered to properly determine how Michael functions with his limited hearing.

### 2. The Domain of Interacting and Relating with Others

Michael argues that the ALJ erred in finding a less than marked limitation in the domain of interacting and relating with others is not supported by substantial evidence because Michael's "communication and speech abilities are severely compromised." ECF No.15 at 14. Difficulty communicating, is an example of limited functioning in this domain. Other examples of limited functioning in this domain as provided in 20 C.F.R. § 416.926 follow[15]:

> (i) You do not reach out to be picked up and held by your caregiver.
>
> (ii) You have no close friends, or your friends are all older or younger than you.
>
> (iii) You avoid or withdraw from people you know, or you are overly anxious or fearful of meeting new people or trying new experiences.
>
> (iv) You have difficulty playing games or sports with rules.

---

[14] The record suggests that while his hearing is unaided, Michael can read lips if he is close enough (within three feet) and, presumably, in a well-lit room and the voice is of a certain pitch. (Tr. 255-60.) *See infra* note 9.

[15] The list is non-exhaustive and may not apply to every age group.

(1:08CV1480)

> (v) You have difficulty communicating with others; e.g., in using verbal and nonverbal skills to express yourself, carrying on a conversation, or in asking others for assistance.
>
> (vi) You have difficulty speaking intelligibly or with adequate fluency.

20 C.F.R. § 416.926a(i)(3)(i-vi).

The ALJ relied on non-examining State Agency consultants Dr. Mormol, Karen Stailey, Ph.D, and Dr. Strassman (the testifying medical expert) who were of the opinion that Michael has a less than marked limitation in this domain. (Tr. 22.) The ALJ also relied on one of Michael's teachers who reported that Michael "got along with others very well, was a positive leader, and had excellent behavior[.]" (Tr. 22.) Additionally, Michael's father's testified that, Michael plays basketball and other sports and can read lips and understand sign language. (Tr. 204 & 255-56.) Those abilities, however, do not complete the analysis of Michael's functioning in this domain.

Of the six examples listed above, the record reflects evidence that Michael has difficulty with at least three of them. Referring to subsection (iii) above, the ALJ wrote, "the claimant did have was [sic] hostile or aggressive with peers, was very sensitive to criticism, and showed signs of nervousness and anxiousness (Exhibit 14F)." (Tr. 22.) With respect to subsections (v) and (vi), the ALJ noted Dr. House, a consultative psychologist, commented that Michael's "level of speech signified 'significant articulation errors' but speech had about 50% comprehensibility; and that he was able to speak in complete, non-complex sentences." (Tr. 19.) Dr. House reported that "[t]here are periods even with repetition when the speech is not understandable." (Tr. 157.) Dr. House also reported that Michael's "speech appears to be below age and

(1:08CV1480)

educational expectation both in terms of clarity and content." (Tr. 157.)

Mr. Abdelshaid testified that Michael can read lips. (Tr. 255.) However, Michael was not able to read lips during the hearing before the ALJ. (Tr. 259-60.) The Medical Expert, Dr. Strassman, testified that Michael may be able to read the lips of some but not others. (Tr. 259-60.)

On balance, the ALJ's conclusion regarding Michael's functioning in this domain may be correct. Whether these examples of limited functioning amounted to a less than marked, marked, or an extreme limitation in this domain is indeterminable from the record now before the Court. As earlier stated, the record must first clearly reflect Michael's ability to hear and the effect of his hearing loss on his ability to function. That information will substantially inform the analysis of Michael's functioning in each disputed domain. Therefore, on remand, the Agency must also reevaluate its findings relative to this domain as well.

### 3. The Domain of Health and Physical Well-Being

Michael argues that Dr. Strassman, the Medical Expert, testified that without hearing aids Michael would have a *marked* limitation in this domain. ECF No. 15 at 14. Again, the record is less than clear on this point. Dr. Strassman testified that, with hearing aids, Michael had a less than marked limitation in the domain of health and physical well-being. See ECF No. 17 at 6, Agency Brief; (Tr. 247.) Dr. Strassman also testified that "without hearing aids [Michael] had a 'marked' rather than 'severe' problem at higher frequencies." See ECF No. 17 at 9, Agency Brief; (Tr. 259.) He concluded that this limitation caused Michael to meet the criteria of Listing 102.08 for higher frequencies if he is tested without hearing aids. (Tr. 247.) The Agency

(1:08CV1480)

objected and accurately pointed out that "[s]evere is not an element of the functional domains." See ECF No. 17 at 9. The correct descriptor would be "extreme." Nomenclature aside, the Medical Expert found that without hearing aids, Michael had serious difficulties hearing certain frequencies.[16] Given the absence of recent medical evidence consisting of hearing tests during which Michael wore two hearing aids *or* tests which articulated whether his hearing had been amplified or not during the testing, the ALJ's conclusion is not supported by the record. The Agency's final decision must depend on something more substantial than "what ifs." The evidence in the record is insufficient to support the ALJ's conclusions. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 174 (1994) (*citing Sullivan v. Finkelstein*, 496 U.S. 617, 625-26 (1990)).

The record is clear in one respect. The Medical Expert needed more information than he had available. More than once, he qualified an answer with a statement such as "Therein lies the rub. I wish this told me . . . Told us whether or not hearing aids make a difference." (Tr. 258.) Or, exasperated "but this whole thing is an enormous confusion to me, because I would rate that differently." (Tr. 260.) The medical expert's statements coupled with the absence of more recent and well-articulated hearing test results leave open the possibility that Michael's functioning is more limited than the ALJ concluded.

For the reasons as stated above, the Court finds substantial evidence does not support the

---

[16] The record is not clear as to which frequencies Michael has the most difficulty hearing. At pages 247-48 of the transcript, the Medical Expert agrees that Michael would have "more difficulty hearing the typical woman's [or young child's] voice as opposed to a man's." Later, the medical expert attributes Michael's unresponsiveness to the voices of himself, Michael's male attorney and the male ALJ, to the deepness of their voices. (Tr. 259.)

(1:08CV1480)

ALJ's finding that Michael has a less than marked limitation in the domain of health and physical well-being.

### IV. Conclusion and Recommendation

The Agency urges that the ALJ's decision fell "within his zone of choice." ECF No. 17 at 8. The undersigned disagrees. The facts of this case are antithetic to the classic case in which "there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir.1984).

The instant record is insufficient to support the ALJ's finding that Plaintiff Michael Abdelshahid did not demonstrate at least a marked limitation in the domains of (1) acquiring and using information, (2) interacting and relating with others, and (3) health and physical well-being. The Court finds that the lack of medical and objective evidence clearly articulating Michael's ability to hear creates a conflict in the evidence which the reviewing court may not resolve. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). The ALJ's decision is, therefore, inconclusive as it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g).

If a court determines that substantial evidence does not support the Commissioner's decision, then the court can reverse the decision and immediately award benefits "only if all essential factual issues have been resolved and the record adequately establishes a plaintiffs entitlement to benefits." *Faucher*, 17 F.3d at 176. The instant record is incomplete and leaves essential factual issues unresolved. Therefore, considering the record as a whole, the undersigned recommends that the final decision of the Commissioner denying benefits be reversed and remanded, pursuant to the Fourth Sentence of 42 U.S.C. § 405(g) with instructions

(1:08CV1480)

that, upon remand, the ALJ evaluate the extent of Michael Abdelshahid's bilateral hearing loss and the effect of that hearing loss on his ability to function in a manner consistent with governing regulations.

    This matter is terminated from the docket of this Court.


|   July 10, 2009 | s/ *Benita Y. Pearson* |
|---|---|
| Date | United States Magistrate Judge |


**OBJECTIONS**

    Objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* United States v. Walters, 638 F.2d 947 (6th Cir. 1981); *see also* Thomas v. Arn, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).